Filing # 40916968 E-Filed 04/29/2016 04:21:27 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

WELLS PHARMACY NETWORK, LLC,

      Plaintiff,

v.

REGULATORY COMPLIANCE ASSOCIATES INC.,

      Defendant.

_____/

## COMPLAINT AND REQUEST FOR JURY TRIAL

WELLS PHARMACY NETWORK, LLC ("Wells" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against REGULATORY COMPLIANCE ASSOCIATES INC ("RCA" or "Defendant") (Wells and RCA are collectively referred to as "the Parties") for breach of contract, breach of the implied covenant of good faith and fair dealing within the contract, and/or for a declaratory judgment, pursuant to Fla. Stat. § 86.011 *et seq*. The declaratory judgment action seeks a finding that the Contract is amorphous and unenforceable in that it does not require that RCA actually work for its fees only that it invoice for fees (whether earned or fraudulent). Alternatively, Wells requests a declaratory judgment finding that RCA's demand for $169,707.21 is improper in that it is in excess of the maximum cost allowed under the Contract and was not warranted under the express terms of the Contract. In support of its claims, Wells alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is a Florida limited liability company with their principal places of business in Wellington, Florida.

2.      Defendant is a Wisconsin corporation doing business in the state of Florida.

3.    This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing within the Contract and for a declaratory judgment finding that RCA cannot enforce its claim/demand for $169,707.21 under the Contract nor is it entitled to attorneys' fees under the Contract given its baseless demand.  Specifically, RCA failed to comply with the express terms of the contract by not providing timely invoices as required by the Contract, over-billed under the contract, fraudulently billed, and billed far in excess of what is permitted under the Contract.  *See* Ex. 1 (The July 8, 2015 Statement of Work, August 13, 2015 Statement of Work, and Regulatory Compliance Associates Inc. Consulting Services Agreement are attached hereto as Ex. 1 and hereinafter collectively referred to as "the Contract").

4.    RCA has demanded $169,707.21 from Wells which is completely inconsistent with the express terms of the Contract.

5.    Venue is proper in Marion County because the cause of action accrued in Marion County, Florida

6.    This Court has jurisdiction over Defendant, pursuant to Fla. Stat. § 48.193(1), because Defendant operated, conducted business, and engaged in business in this state and breached a contract within this state by routinely, regularly, and purposefully sending electronic communications to Wells in Florida; routinely, regularly, and purposefully sending hard copy communications to Wells in Florida; and routinely, regularly, and purposefully making telephonic communications in Florida.  All of Defendant's actions in the state of Florida were purposefully made within Florida and with the intention of procuring money for services purported to be performed in Florida.  Defendant misrepresented itself and its services to Wells in Florida.

2

**GENERAL ALLEGATIONS**

7.    Wells is a privately held compounding pharmacy specializing in wellness, weight management, urology, ophthalmology, and veterinary compounding solutions.

8.    Defendant holds itself out as an expert in the field of consulting services, auditing services, and validating services for regulated entities, such as Wells, in the life sciences.

*The Contract*

9.    The Contract at issue provided: "This is a time and material proposal. Wells will only incur the cost of the time necessary to complete the scope of work. **The cost estimate [$133,350] will not be exceeded without prior approval from Wells.**" *Id.* (emphasis added).

10.    The Contract at issue provided: "**RCA will invoice [Wells] biweekly** for fees and for all reasonable and necessary expenses and pass through costs incurred in the performance of the Services." *Id.* (emphasis added).

11.    Defendant did not comply with its obligations. Specifically, despite beginning to provide services in August 2015, RCA failed to provide biweekly invoices. RCA waited until December 22, 2015 to provide staggering, grossly inflated, and fraudulent invoices in the amount of $119,853.02 and $56,146.69. The delayed invoices damaged Wells by aggregating purported services that should have been invoiced biweekly and, if timely invoiced, would have allowed Wells to object earlier to the fraudulent fees.

12.    The infrequency of the Invoices allowed RCA to, in one improper fell swoop, submit completely over-inflated, fraudulent invoices that demanded excessive fees in an amount far above the maximum cost permitted under the Contract.

13.    RCA invoiced for expenses unrelated to work performed for Wells.

14.     RCA incurred fees for actions -- providing a consultant -- when expressly instructed not to provide the consultant.

15.     RCA failed to comply with material terms of the Contract.  RCA failed to comply with the implied covenant of good faith and fair dealing in that the fees billed were not commercially reasonable or consistent with the intention of the Contract as they were not actually performed.

16.     RCA failed to provide timely invoices, in contravention of the Contract, and submitted grossly, and at times, fraudulently inflated hours of work.  As just an example, SOPs that took approximately fifty hours were billed in excess of 300 hours.  These actions have created a *bona fide* dispute as to the rights of the Parties under the Contract.

## COUNT I

## BREACH OF CONTRACT

17.     Wells re-alleges its allegations in paragraphs 1-16 as if fully set forth herein.

18.     Wells and RCA are parties to a contract.

19.     Defendant failed to perform under the contract by not providing timely invoices, billing for services and expenses not performed or incurred for Wells, and billing time not necessary to complete the scope of work.

20.     Wells has been paid over $18,000 and been damaged in the amount to be determined at trial.

WHEREFORE, Wells requests a judgment that RCA failed to perform under the contract and breached the contract.  Further, Wells requests that the Court find that Wells is entitled to its damages as a result of Defendant's breaches, its attorneys' fees and costs under Fla. Stat. § 51.105(7), and for such other and further relief as this Court deems just and proper.

4

## COUNT II

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

21.     Wells re-alleges its allegations in paragraphs 1-20 as if fully set forth herein.

22.     Wells and RCA are parties to a contract.

23.     The Contract provided that Wells would pay RCA's fees.

24.     The implied covenant of good faith and fair dealing requires that RCA bill Wells only for fees for services performed, not for unreasonable or fictitious fees that RCA simply Invoices without any actual work.

25.     RCA breached the implied covenant of good faith and fair dealing by failing to provide timely invoices so Wells could reject unreasonable invoices and by billing Wells for unreasonable and improper expenses and fees.  Wells has been paid over $18,000 and been damaged in the amount to be determined at trial.

WHEREFORE, Wells requests a judgment that RCA breached the implied covenant of good faith and fair dealing contained within the Contract.  Further, Wells requests that the Court find that Wells is entitled to its damages as a result of Defendant's breaches and for such other and further relief as this Court deems just and proper.

### COUNT III

### FLA. STAT. § 86.011 -- REQUEST FOR DECLARATORY RELIEF

26.     Wells re-alleges its allegations in paragraphs 1-25 as if fully set forth herein.

27.     Defendant claims that it has a contractual relationship with Wells.

28.     Defendant contends that Wells owes it $169,707.21 and demands attorneys' fees under the Contract.

29. Wells disputes Defendant's contention that: (i) there is an enforceable contract, (ii) Defendant can bill Wells more than $133,350, and/or (iii) Defendant is owed $133,350 based on the express language of the Contract and the work performed.

30. There is a *bona fide* dispute as to whether there is an enforceable contract, whether the demanded money is appropriate under the Contract, who is entitled to attorneys' fees based on Defendant's untenable claim and, accordingly, Wells is entitled to a declaration of rights.

31. The purported Contract at issue does not provide any indication of what exactly Defendant can invoice Wells for; rather it simply states: "RCA will invoice [Wells] biweekly for fees."

32. Further, putting aside the fact RCA breached its obligation to provide biweekly invoices; there is a dispute as to whether RCA can, as it contends, simply demand fees for work not performed and in excess of the maximum estimate under the Contract.

WHEREFORE, Wells requests a declaratory judgment that the purported Contract between Wells and Defendant is unenforceable and/or not subject to the assertion of fees in excess of $133,350 and/or not subject to the amount of fees demanded for work not performed yet invoiced.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

DATED: April <u>29st</u>, 2016

Respectfully submitted,

GONZALEZ SHENKMAN & BUCKSTEIN PL
Attorneys for Plaintiff
1035 South State Road 7 – Suite 312
Wellington, FL 33414
Telephone:  561.227.1575
Facsimile: 561.227.1574
bbuckstein@gsblawfirm.com


*/s/ Brian D. Buckstein*
Brian D. Buckstein, Esq.
Fla. Bar No. 0618934

Filing # 40916968 E-Filed 04/29/2016 04:21:27 PM

EXHIBIT "1"

REGULATORY COMPLIANCE ASSOCIATES INC.

WELLNESS FOR BUSINESS

# REGULATORY COMPLIANCE ASSOCIATES INC.
## CONSULTING SERVICES AGREEMENT

This Consulting Services Agreement ("Agreement") is made between **Wells Pharmacy Network** ("Sponsor"), which has a place of business at 1210 SW 33rd Avenue, Ocala, FL. 34474. and **Regulatory Compliance Associates Inc.** ("RCA"), a Wisconsin corporation having offices at 10411 Corporate Drive. Suite 102, Pleasant Prairie, WI 53158. When signed by both parties, this Agreement will set forth the terms and conditions under which RCA agrees to provide certain services to Sponsor as set forth herein.

### Recitals:

Sponsor is in the business of developing, manufacturing and/or distributing products, devices and/or services. RCA is in the business of providing consulting services, auditing services, validation services, and other services for related entities.

Sponsor and RCA desire to enter into this Agreement under which RCA will perform services described in one or more Proposals or Statements of Work.

### Agreement:

**Services to be Provided.** The services to be performed hereunder (the "Services") shall be specified in individual Proposals or Statements of Work and such Proposals or Statements of Work are incorporated herein by reference. To the extent the obligations referred to in the individual Proposals or Statements of Work differ from what is set forth in this Agreement, the specific terms of the individual Proposals or Statements of Work shall control.

**Payment of Fees and Expenses.** Sponsor will pay RCA's fees, expenses and pass-through costs. Sponsor agrees that payment will be structured in an effort to maintain cash neutrality for RCA. RCA will invoice Sponsor biweekly for fees and for all reasonable and necessary expenses and pass-through costs incurred in the performance of the Services. Sponsor shall pay each invoice within fifteen (15) days of the date of the invoice. Sponsor agrees to accept RCA's invoice in its designated format. If any portion of an invoice is disputed, then Sponsor shall pay the undisputed amounts as set forth in the preceding sentence and the parties shall use good faith efforts to reconcile the disputed amount as soon as practicable. Payment for the services is not dependent upon third party payment.

**Term and Termination.** This Agreement shall commence on the date that it is executed by both parties and shall continue until services are completed or until terminated by either party. This Agreement may be terminated without cause by either party at any time during the term of the Agreement on thirty (30) days' prior written notice to the other party. Either party may terminate this Agreement for material breach upon thirty (30) days' written notice specifying the nature of the breach, if such breach has not been substantially cured within the notice period. In the event that RCA determines, in its sole discretion, that its continued performance of the Services contemplated by this Agreement would constitute a potential or actual violation of regulatory or scientific standards of integrity, RCA may terminate this Agreement by giving written notice stating the effective date (which may be less than thirty days from the notice date) of such termination. In the event this Agreement is terminated for any reason, Sponsor shall pay RCA for all Services performed in accordance with this Agreement and reimburse RCA for all costs and expenses incurred in performing those Services.

**Program Change Request.** Any material change in the details of services to be performed under this Agreement (as set forth in one or more Proposals or Statements of Work) or any material change in the assumptions upon which this Agreement is based, including, but not limited to, changes in an agreed starting date for a project or suspension of the project by Sponsor, may require changes in the budget and/or timelines. Any material change or "Program Change Request" shall require a written amendment to the Agreement or an affected Purchase Order. A Program Change Request will become effective as an amendment of this Agreement when executed by both parties, and RCA will be given a reasonable period of time within which to implement the changes. Both parties agree to act in good faith and promptly when considering a Program Change Request submitted by the other party. RCA reserves the right to postpone effecting material changes in the scope of the Services until such time as the parties agree to and execute the corresponding Program Change Request.

**Confidentiality.** It is understood that during the course of this Agreement both parties and their employees may be exposed to data and information which is confidential and proprietary to the other party. All such data and information (hereinafter "Confidential Information"), whether written or verbal,

tangible or intangible, made available, disclosed, or otherwise made known to the other party and its employees under this Agreement shall be considered confidential and the sole property of the disclosing party. The Confidential Information shall be used by the receiving party and its employees only for purposes of performing the receiving party's obligations hereunder. Each party agrees that it will not reveal, publish or otherwise disclose the Confidential Information of the other party to any third party, or use the Confidential Information for its own benefit, without the prior written consent of the disclosing party. Each party agrees that it will not disclose the terms of this Agreement to any third party without the written consent of the other party. These obligations of confidentiality and nondisclosure shall remain in effect for a period of ten (10) years after the termination of this Agreement.

The foregoing obligations shall not apply information to the extent it: (a) is or becomes generally available to the public other than as a result of a disclosure by the receiving party; (b) becomes available to the receiving party on a non-confidential basis from a source which is not prohibited from disclosing such information; (c) was developed independently of any disclosure by the disclosing party or was known to the receiving party prior to its receipt from the disclosing party, as shown by contemporaneous written evidence; or (d) is required by law or regulation to be disclosed.

**Ownership and Inventions.** All data and information related to Sponsor's project which is generated or derived by RCA as the result of services performed under this Agreement shall be the exclusive property of Sponsor. RCA agrees to assign to Sponsor any inventions which relate to Sponsor's project. Notwithstanding the foregoing, Sponsor acknowledges that RCA may possess certain inventions, processes, know-how, trade secrets, improvements, other intellectual property and other assets, including but not limited to analytical methods, procedures and techniques, procedure manuals, personnel data, financial information, computer, technical expertise and software, which have been independently developed by RCA and which relate to its business or operations (collectively "RCA's Property"). Sponsor and RCA agree that any of RCA's Property or improvements thereto which are used, improved, modified or developed by RCA under or during the term of this Agreement are the property of RCA.

**Independent Contractor Relationship.** For the purposes of this Agreement, the parties hereto are independent contractors and nothing contained in this Agreement shall be construed to place them in the relationship of partners, principal and agent, employer/employee or joint venturers. Neither party shall have the power or right to bind or obligate the

other party, nor shall it hold itself out as having such authority.

**Regulatory Compliance; Inspections.** RCA agrees that its Services will be conducted in compliance with all applicable laws, rules and regulations, and with the standard of care customary in the validation services industry. Sponsor will not require RCA to perform any assignments or tasks in a manner that would violate any applicable law or regulation. Sponsor will cooperate with RCA in taking any actions that RCA reasonably believes are necessary to comply with the regulatory obligations that have been undertaken by RCA on behalf of Sponsor.

Each party agrees that, during an inspection by the FDA or other regulatory authority concerning any study or project of Sponsor in which RCA is providing Services, it will not, without the prior consent of the other party, disclose information and materials that are not required to be disclosed to such agency. Consent to disclosure shall not be unreasonably withheld.

**Limitation of Liability.** Neither RCA nor its affiliates, nor any of their respective directors, officers, employees or agents, shall have any liability of any type (including, but not limited to, contract, negligence, and tort liability) for any special, incidental, indirect or consequential damages, (including, but not limited to the loss of opportunity, loss of use, or loss of revenue or profit, and damage to equipment) in connection with or arising out of this Agreement or the Services performed by RCA hereunder, even if such damages may have been foreseeable to RCA. In addition, in no event shall the collective, aggregate liability (including, but not limited to, contract, negligence and tort liability) of RCA and its affiliates, and of their respective directors, officers, employees and agents, under this Agreement exceed the amount of fees actually received by RCA from Sponsor for the task from which such liability arose. Any and all changes from the time the Services are provided, including, but not limited to, changes in the process, materials, equipment, and software (hereinafter the "Changes"), invalidate RCA's original conclusions, perspectives and recommendations. Sponsor agrees not to hold RCA liable for losses as a result of the Changes, even if such changes were foreseeable by RCA.

**Indemnification.** Sponsor shall indemnify, defend and hold harmless RCA and its affiliates, and their directors, officers, employees and agents from and against any and all losses, damages, liabilities, reasonable attorney fees, court costs, and expenses (collectively "Losses") resulting or arising from any third-party claims, actions, proceedings, investigations or litigation relating to or arising from or in connection with this Agreement or the Services contemplated herein (including, without limitation,

any Losses arising from or in connection with any study, test, device, product or potential product to which this Agreement relates), except to the extent such Losses are determined to have resulted solely from gross negligence or intentional misconduct of RCA or the other above-noted indemnified parties. Sponsor recognizes that RCA bases its services upon information provided by Sponsor which includes, but is not limited to, data, equipment, designs, instructions and protocols (hereinafter "the Information"), and that any and all conclusions, services, perspectives or recommendations rely upon the veracity and completeness of the information. Sponsor agrees to indemnify, defend and hold harmless RCA, and the other indemnified parties referred to above from and against any and all losses resulting or arising from inaccurate or insufficient information provided by Sponsor. Sponsor also agrees that, due to the nature of validation services, the parties are unable to account for all possibilities with absolute certainty. As a result, the parties' expectations for performance shall be limited to the specific scope of Services outlined in one or more Proposals or Statements of Work. RCA shall not be liable for, and Sponsor shall indemnify, defend and hold harmless RCA, and the other above-noted indemnified parties from and against, any and all claims of losses or damages which result or arise from actions which may be attributable to the Services performed, but which fall outside the specific scope of Services as outlined in the one or more Proposals or Statements or Work.

**Relationship with Affiliates.** Sponsor agrees that RCA may use the Services of its affiliates and consultants to fulfill RCA's obligations under this Agreement. Any affiliate or consultant so used shall be subject to all of the terms and conditions applicable to RCA under this Agreement and entitled to all rights and protections afforded RCA under this Agreement. RCA agrees that Sponsor's affiliates may use the services of RCA (and its affiliates and consultants) under this Agreement. In such event, Sponsor's affiliates shall be bound by all the terms and conditions of this Agreement and entitled to all rights and protections afforded Sponsor under this Agreement.

**Nonsolicitation** Sponsor acknowledges that during the term of this Agreement and for a period of one (1) year following termination of such Agreement, that Sponsor shall not, without the express written consent of RCA, (a) directly or indirectly, solicit, recruit or induce (nor assist anyone in soliciting; recruiting or inducing) any employee of RCA to terminate his or her relationship with RCA, (b) induce (nor assist anyone else in inducing) any supplier, vendor, consultant or independent contractor of RCA to terminate or negatively alter his, her or its relationship with RCA, or (c) directly or indirectly solicit or induce (nor assist anyone else in soliciting, or inducing) any client or customer of RCA whose

Information was accessible to Sponsor pursuant to this Agreement. The parties acknowledge that it would be difficult or impossible to ascertain the measure of damages to RCA resulting from any breach of this Section in the event of a breach or threatened breach of the provisions of this section, RCA shall be entitled to seek a temporary or permanent injunction to enjoin Sponsor from conduct in violation of the provisions hereof, in addition to any and all other rights or remedies that RCA may have available under applicable law for such breach or threatened breach.

**Cooperation; Sponsor Delays; Disclosure of Hazards.** Sponsor shall forward to RCA in a timely manner all data and information in Sponsor's possession or control necessary for RCA to perform the Services. RCA shall not be liable to Sponsor nor be deemed to have breached this Agreement for errors, delays or other consequences arising from Sponsor's failure to provide documents, materials or information or to otherwise cooperate with RCA as necessary for RCA to timely and properly perform its obligations. Sponsor acknowledges that, if it materially delays or suspends performance of the Services, then the personnel and/or resources originally allocated to the project may be re-allocated by RCA, and RCA will not be responsible for delays due to required re-staffing or re-allocation of resources. Sponsor shall provide RCA with all information available to it regarding known or potential hazards associated with the use of any substances supplied to RCA by Sponsor, and Sponsor shall comply with all current legislation and regulations concerning the shipment of substances by the land, sea or air.

**Insurance.** Each party will maintain, for the duration of this Agreement, insurance in an amount reasonably adequate to cover its obligations hereunder, and, upon request, each party will provide to the other party a certificate of insurance showing that such insurance is in place.

**Assignment.** Except as related to the use of affiliates, neither party may assign any of its rights or obligations under this Agreement to any party without the express, written consent of the other party.

**Choice of Law and Enforceability.** This Agreement shall be construed, governed, interpreted, and applied in accordance with the laws of the State of Wisconsin, exclusive of its conflicts of laws provisions. The failure to enforce any right or provision herein shall not constitute a waiver of that right or provision. If any provisions herein are found to be unenforceable on the grounds that they are overly broad or in conflict with applicable laws, it is the intent of the parties that such provisions be replaced, reformed or narrowed so that their original business purpose can be accomplished to the extent

CONFIDENTIAL          Regulatory Compliance Associates Inc.          i

permitted by law, and that the remaining provisions shall not in any way be affected or impaired thereby.

**Attorneys' Fees.** In the event that RCA retains counsel to collect any fees or expenses which are past due in excess of the time frame provided for herein, or with respect to the interpretation or enforcement of any provision of this Agreement, Sponsor shall be required to reimburse RCA for any and all attorneys' fees reasonably incurred by RCA, together with any related costs or expenses incurred by RCA, or its attorneys, with respect to any such collection, interpretation or enforcement of this Agreement.

**Survival:** The rights and obligations of Sponsor and RCA, which by intent or meaning have validity beyond such termination (including, but not limited to, rights with respect to product-related inventions, confidentiality, discoveries and improvements, indemnification and liability limitations) shall survive termination of this Agreement.

**Entire Agreement and Modification.** This Agreement contains the entire understandings of the parties with respect to the subject matter herein, and supersedes all previous agreements (oral and written), negotiations and discussions. Any modifications to the provisions herein must be in writing and signed by the parties.

If either party uses a scanned or facsimile transmittal, that copy shall be deemed an original for purposes of establishing the existence of and / or enforcing rights and obligations hereunder.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto through their duly authorized officers on the date(s) set forth below.

ACKNOWLEDGED, ACCEPTED AND AGREED TO:

**Regulatory Compliance Associates Inc.**

By: _Kevin Williams Kushner_

Title: _Director, Program Management_

Date: _August 12, 2015_

**Sponsor**

**Wells Pharmacy Network**

By: _Kristopher_

Title: _SVP of Operations_

Date: _10/05/2015_



REGULATORY COMPLIANCE ASSOCIATES INC

WELLNESS FOR BUSINESS

**503B Facility Compliance Initiative – Phase I**

**RCA Proposal # 10087**

**For**

**Wells Pharmacy Network**

**Ocala, FL**

**Submitted:  July 8, 2015**

**Prepared For:**
Ben David
Chief Executive Officer
Wells Pharmacy Network
Tel: 561-793-1568
bdavid@wellsrx.com

**Prepared by:**
J. Andrew Harrison
Chief Regulatory Affairs Officer & General Counsel
Regulatory Compliance Associates Inc.
Tel: 262-842-1270
a.harrison@rcainc.com

Rev 2  Effective Date: 07-18-2014

10411 Corporate Drive, Suite 102, Pleasant Prairie. WI  53158      main 262-842-1250   fax 262-842-1240   www.rcainc.com

## 1.0    Background

This proposal or Statement of Work is subject to the terms and conditions noted in the Consulting Services Agreement between Wells Pharmacy Network and Regulatory Compliance Associates® Inc.

Wells Pharmacy Network (Wells) has requested that Regulatory Compliance Associates® Inc. (RCA) provide a proposal for the development of a compliance program for a 503B outsourcing facility network. Included in the program will be a physical quality and cleanroom design assessment of the premises including equipment and critical utilities as well as a baseline analysis of all existing standarding operating procedures (and associated work instructions). To the extent required based on the results of the assessment and analysis, RCA will develop a remediation plan for same.

RCA understands that Wells intends to deploy a corporate quality program across multiple sites. Accordingly, RCA plans to support the implementation of the program first in one establishment as a pilot measure, followed then by total site deployment assuming successful (from an audit standpoint) pilot results. RCA further understands that Wells intends that the initial facility in Ocala will be operational by end of Q1, 2016 and is prepared to support the project continuously.

Due to certain presently unknown variables (e.g. depth and breadth of procedural revision required following analysis, facility/engineering assessment results, etc.) it should be noted that these could alter project timing, RCA is tendering a time and materials proposal which will align to Wells facility planning following completion of both the assessment and analysis. Additional work generated from the facility/engineering assessment and procedure analysis will commence under this proposal, though extension in the form of a Program Change Request (PCR) may become necessary to ensure alignment with Wells' facility planning timelines or to ensure completion of remediation activities.

In the medical device, pharmaceutical, and biotech industries, Regulatory Compliance Associates® Inc. brings full-spectrum solutions to compliance and regulatory challenges. Aligning strategy, leadership and proven industry experts to address FDA, global regulatory and operational related issues, RCA combines a customized plan of action with experienced resources to meet our clients' specific requirements and goals.

## 2.0    Scope of Work

Wells has asked RCA to provide the following services:

- Physical quality and cleanroom design assessment in accordance with the following requirements:
    - o  FDA Guidance for Industry, Current Good Manufacturing Practice — Interim Guidance for Human Drug Compounding Outsourcing Facilities Under Section 503B of the FD&C Act
    - o  FDA Guidance for Industry, Sterile Drug Products Produced by Aseptic Processing Current Good Manufacturing Practice
    - o  FDA Guidance for Industry, Q10 - Pharmaceutical Quality System
    - o  Applicable PDA Technical Reports and ISPE Baseline Guides
- Complete baseline analysis of all existing standarding operating procedures (and associated work instructions)

## 3.0    Deliverables

The deliverables for Phase I of this project are as follows:

- Facility Quality, Cleanroom Design & Equipment Assessment Report (with corresponding Validation Master Plan)
- Baseline Analysis Report of Standard Operating Procedures with Remediation Plan

Rev 2  Effective Date: 07-18-2014

10411 Corporate Drive, Suite 102, Pleasant Prairie, WI  53158      main 262-842-1250      fax 262-842-1240      www.rcainc.com

## 4.0    Staffing

The RCA resource requirements for this project effort are listed below:

| Role | Summary of Role | Number Required |
|------|-----------------|-----------------|
| Regulatory Compliance Expert: Pharmaceutical Compounding | Compliance and regulatory-based expertise which can effectively drive strategic discussions with corporate executives, business unit functional leaders and external regulatory agencies to resolve serious compliance concerns and/or to build compliant regulatory strategies for intended markets; Able to adapt and determine appropriate actions to accommodate a highly varied set of circumstances pertaining to quality and regulatory compliance while evaluating FDA and internal quality management/business risk. This resource supports all workstreams. | 1 |
| Senior Quality Specialist: Pharmaceutical Compounding | Quality systems expert having a minimum of 15+ years of quality and regulatory experience, including risk management, CAPA, sterility assurance, sterilization, validation, technical writing, information technology & personnel training. Resources hold a degree in engineering or life sciences and holds a ready ability to develop strategy and set core quality policies for new facilities. Effectively manages others and functions as a strategic thinker and worker. The quality specialists will be assigned across all workstreams. | 1 |
| Engineering Subject Matter Expert: Facilities/Utilities | Subject matter expert in facilities and utilities compliance exhibiting the highest levels of technical expertise in performing a specialized job, task or skill. Engineering SME are highly knowledgeable in their field having a minimum of 15+ years of experience and are well-versed in their discipline such that he/she can provide firm guidance on establishing and defining strategies and approaches to meet current regulatory requirements, industry standards and internal client standards. SME assist with developing high-level discipline related documents (policy/standard operating procedures) and they insure projects and programs are properly implemented and risk-managed to achieve goals. | 1 |

## 5.0    Cost Estimate

| Resource | Total Hours | Hourly Rate | Cost |
|----------|-------------|-------------|------|
| Regulatory Compliance Expert | 40 | $375 | $15,000 |
| Senior Quality Specialist | 320 | $225 | $72,000 |
| Engineering Subject Matter Expert | 160 | $250 | $40,000 |
| Management and Administration | | | $6,350 |
| Estimated Travel and Expenses | | | TBD |
| TOTAL | | | $133,350 |

This is a time and materials proposal. Wells will only incur the cost of the time necessary to complete the scope of work. The cost estimate will not be exceeded without prior approval from Wells.

**Note:**

1.   Lodging and transportation charges will be billed at actual expenses.

## 6.0     Assumptions

The development of this proposal is based on the following assumptions:

- RCA will provide project management and subject matter expertise resources. Wells will provide the appropriate team resources to execute the project plan.
- The budget numbers submitted in this Statement of Work are based on working collaboratively with Wells resources.
- The budget numbers submitted in this proposal are based on the Wells internal resources being available as identified in this Statement of Work.

## 7.0     Commercial Terms

- Expenses will be billed at actual cost.
- Payment terms are NET 15 from the invoice receipt date. Any undisputed amounts not paid by the due date are subject to a late payment interest charge calculated on the outstanding amount at 1.5% per month until paid in full.
- A Consulting Services Agreement must be mutually approved and executed between Wells and RCA.
- Wells agrees to provide RCA with a copy of the Purchase Order corresponding to the project described in this proposal prior to the initiation of services.

## 8.0     Proprietary Statement

This document contains confidential and proprietary information and is the property of Regulatory Compliance Associates® Inc. This document was prepared for the requesting party for the sole purpose of evaluating the consulting services proposed. It is submitted to you in confidence, on the condition that you and your representatives have, by receiving it, agreed not to reproduce or copy it, in whole or in part, or to furnish such information to others, or to make any other use of it except for the evaluation purposes stated above, and to return it to Regulatory Compliance Associates® Inc. upon request. The previous statement shall not apply to the extent that such statement violates any federal or state laws requiring such information to be made available to the public. In the event this document results in a contract, you may retain this document for use, including making any necessary copies related to the services covered by such contract. The offerings and prices presented in this document, excluding any leasing quotes or rates, shall remain valid for a period of 90 days from the document date unless Regulatory Compliance Associates® Inc. authorizes an extension.

CONFIDENTIAL          RCA Proposal & RFP for Wells Pharmacy Network

## Signature

An authorized signature below indicates acceptance by Wells Pharmacy Network of this Statement of Work.

If either party uses a scanned or facsimile transmittal, that copy shall be deemed an original for purposes of establishing the existence of and / or enforcing rights and obligations hereunder.

For:  Wells Pharmacy Network

_____
Signature

_____
William E. McMinniel
Printed Name

_____
Managing Director
Title

_____7/30/15_____
Date

For:  Regulatory Compliance Associates® Inc.

_____
Signature

J. Andrew Harrison
_____
Printed Name

Chief Regulatory Affairs Officer & General Counsel
_____
Title

_____7/31/2015_____
Date

Purchase Order Number: _____

**Appendix A: Program Change Control Procedure**

It may become necessary to amend this Statement of Work for reasons including, but not limited to, the following:

- Discretionary changes to the project schedule
- Discretionary changes in the scope of the project
- Requested changes to the work hours of RCA personnel
- Non-availability of products, resources or services which are beyond RCA's control
- Environmental or architectural impediments not previously identified
- Lack of access to client personnel or facilities necessary to complete project
- Additional Subject Matter Expert (SME) or Engineering/Technician support

**Program Change Request**

A Program Change Request (PCR) will be the vehicle for communicating change. The PCR must describe the change, reasons for the change, and the effect the change will have on the project, which may include scheduling changes, pricing, etc. A PCR may be initiated by either RCA or Wells based on the situation.

In the event that it is necessary to change this Statement of Work, the following process will be followed:

1. The designated Primary Client Contact (PC) of the requesting party will review the proposed change and determine whether to submit the request to the other party.

2. Both Primary Client Contacts (PCs) will review the proposed change and approve it or reject it. If further investigation on the part of RCA is requested in order to determine the scope of the change, any charges for that investigation will be outlined. Both Primary Client Contacts (PCs) will sign the PCR, indicating the acceptance of both parties to the changes, which may affect pricing, schedules, and contractual commitments.

3. Upon acceptance of the change request by both Primary Client Contacts (PCs), the Scope of Work and costs will be modified appropriately, and the changes will be incorporated into the project.

4. The Purchase Order (PO) affected by the change will be indicated on the PCR, and the PCR Number will be referenced when invoicing for any additional charges against the PO.

A Program Change Request form is provided on the following page.

**Regulatory Compliance Associates© Inc.**

**Program Change Request**

Date: _____           PCR Number:

Requester: _____      _____

**Nature of the proposed Change:**




**Reason for the Change:**




**Impact of the Change:**

|  |  |
|---|---|
| **Program Schedule:** | |
| **Program pricing:** | |
| **Other impact:** | |
| **PO to which changes will apply:** | |

**Signatures:**

RCA Program Sponsor: _____   Date: _____

Client Program Sponsor: _____   Date: _____



REGULATORY COMPLIANCE ASSOCIATES INC.

WELLNESS FOR BUSINESS

# 503B Facility Compliance Initiative – Phase 1

## RCA Proposal # 10087

### For

### Wells Pharmacy Network

### Ocala, FL

### Submitted:  August 13, 2015

**Prepared For:**
Ben David
Chief Executive Officer
Wells Pharmacy Network
561-793-1568
bdavid@wellsrx.com

**Prepared by:**
Karen Altemoos-Kastner
Director Program Management
RCA
262-842-1266
k.altemoos-kastner@rainc.com

CONFIDENTIAL          RCA Proposal # 10087 for Wells Pharmacy Network

# Regulatory Compliance Associates® Inc.

## Program Change Request

**Date:**  __August 13, 2015__

**PCR Number:**  __PCR 1__

**Requester:**  __K. Altemoos-Kastner__

**Nature of the proposed Change:**
This PCR is for support of unplanned and represents incremental work to support 503A activities.  Please note that this may require a follow-on PCR to complete original scope of work for RCA project 10087.

**Reason for the Change:**
Wells Pharmacy Network has asked for additional assistance from RCA to support additional activities in the 503A area.

**Impact of the Change:**

**Program Schedule:  None**

**Program pricing: $0**

**Other impact: Additional PCR may be required to support original scope of work as outlined in RCA Project 10087.  Additional PCR will be submitted as needed.**

**PO to which changes will apply: N/A**

**Signatures:**

**RCA Program Sponsor:** _Karen Altemoos-Kastner_  **Date:** _August 13, 2015_

**Client Program Sponsor:** _[signature]_  **Date:** _10/05/2015_