# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**WELLS PHARMACY NETWORK,**
**LLC,**

> **Plaintiff,**

**v.**                                                            **Case No: 5:16-cv-319-Oc-37PRL**

**REGULATORY COMPLIANCE**
**ASSOCIATES INC.**

> **Defendant.**

_____

## REPORT AND RECOMMENDATION[1]

In this contract dispute, the Defendant, Regulatory Compliance Associates Inc., agreed to provide consulting services to Plaintiff, Wells Pharmacy Network, LLC.   Plaintiff complains, however, that Defendant breached the contract, and an implied duty of good faith and fair dealing, by improperly billing it.   Plaintiff seeks damages for these claims and a declaration that the contract is either unenforceable or expressly limits the amount Defendant can charge.   Defendant moves to dismiss these claims.   (Doc. 21).

As set forth below, I recommend that the motion be denied in its entirety, as Plaintiff sufficiently states its claims for relief.

_____

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions.   *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

## I.   BACKGROUND[2]

This dispute, then, is about billing issues between two businesses.   Plaintiff is a Florida compounding pharmacy (Doc. 17, ¶¶ 1, 5), while Defendant is a Wisconsin consulting firm that provides consulting services to life-science firms, such as Plaintiff.   (Doc. 17, ¶¶ 2, 6).   These two firms entered into various agreements, which I will collectively call the Contract.[3]   (Doc. 17, ¶ 7).   Under the Contract, Defendant provided consulting services at Plaintiff's Ocala, FL site.   (Doc. 17, ¶¶ 3, 7; 17-1, pp. 2, 6).

According to Plaintiff, the parties agreed to a fee and cost estimate of $133,350.   (Doc. 17, ¶ 7).   This fee and cost estimate, as Plaintiff alleges, limits the amount Defendant can charge Plaintiff to no more than $133,350.   Indeed, this cost and fee estimate can only be exceeded with Plaintiff's prior approval.

Also, Defendant agreed to bill Plaintiff bi-weekly.   (Doc. 17, ¶ 17).   Despite Defendant's duty to bill Plaintiff bi-weekly, it did not.   Defendant instead delayed billing for months and then clumped together four or five months' worth of bills into two invoices.   (Doc. 17, ¶¶ 14, 17–20).   Though the total amount requested in these two invoices exceeded $133,350, Plaintiff insists that it never authorized any amount above the limit.   (Doc. 17, ¶¶ 15, 17, 45).

Plaintiff has paid Defendant, to date, $68,219.60.   (Doc. 17, ¶ 15).   This amount is in controversy too: Plaintiff asserts that Defendant has fraudulently over-billed, bills which Plaintiff has in part paid.   For instance, Plaintiff contends that Defendant billed for a consultant that Plaintiff specifically asked Defendant not to provide; Defendant billed for unrelated costs; and

---

[2] The background "facts" are taken from the amended complaint (the "Complaint").   (Doc. 17).   Plaintiff initially filed this case in state court, but Defendant removed to this Court asserting jurisdiction under 28 U.S.C. § 1332.   (Docs. 1, 2, 14, 17).

[3] The parties first signed two proposals, and then they signed a consulting service agreement.   Plaintiff has attached copies of the proposals and the agreement to the Complaint.   (Doc. 17-1).

Defendant billed for 321 hours of work to create a standard operating procedure template that only required 56 hours of work.[4]   (Doc. 17, ¶¶ 23–25).   In short, Plaintiff insists that it has already overpaid Defendant.   (Doc. 17, ¶¶ 31, 36–37).

When Plaintiff contacted Defendant about these billing problems, Defendant initially indicated that it would work with Plaintiff to resolve them.   (Doc. 17, ¶ 26).   Instead, Defendant sent Plaintiff a demand letter requesting an amount above the agreed to $133,350 estimate.   In fact, Defendant demanded $237,926.81 in total from Plaintiff.   (Doc. 17, ¶ 15).   At some point, Plaintiff offered Defendant $133,350 to resolve their dispute, but Defendant rejected the offer. (Doc. 17, ¶ 27).

Based on these alleged acts, Plaintiff filed suit and asserts three Counts: (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing; and (3) under 28 U.S.C. § 2201, the Federal Declaratory Judgment Act, Plaintiff requests a declaration that the Contract is illusory and unenforceable insofar as it allows Defendant to bill for services not rendered, or, in the alternative, Plaintiff requests a declaration that the Contract limits the amount that Plaintiff could owe Defendant to $133,350.

## II.   LEGAL STANDARD

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8,

---

[4] Plaintiff states that by withholding the invoices for months, Defendant deprived Plaintiff of the ability to timely object to these excessive and fraudulent charges.   (Doc. 17, ¶ 21).

as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).   In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*.   First, the court will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).   Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted).

## III.   DISCUSSION

As an initial matter, in this removed diversity suit, "the choice-of-law rules of the forum state determine which state's substantive law applies." *RSUI Indem. Co. v. Desai*, No. 8:13-CV-2629-T-30TGW, 2014 WL 4347821, at *2 (M.D. Fla. Sept. 2, 2014).   And in Florida, "when contracting parties indicate in the contract their intention as to the governing law, any dispute under the contract will be governed by such law as long as it is not against Florida's public policy." *Videojet Techs. Inc. v. Garcia*, No. 8:07-CV-1407T30MAP, 2008 WL 2415042, at *3 (M.D. Fla. June 12, 2008)) (footnote omitted).   The Contract here states (and the parties do not dispute) that Wisconsin law governs.[5]   (Doc. 17-1, pp. 4–5).   Thus, absent argument to the contrary, Wisconsin law applies to Plaintiff's first two Counts.

As to Plaintiff's request for declaratory judgment under 28 U.S.C. § 2201, "this Court applies federal law for its determination of the sufficiency of the complaint" as "declaratory judgment acts are procedural mechanisms and confer no substantive rights." *Maryland Cas. Co. v. Smartcop, Inc.*, No. 4:11-CV-10100-KMM, 2012 WL 2675476, at *2 (S.D. Fla. July 6, 2012); *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010) ("The Federal Rules of Civil Procedure 'govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201.' As a result, 'the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions . . . .'") (quoting Fed. R. Civ. P. 57. and 10B

---

[5]  I note that Plaintiff requests attorney's fees and costs under Florida law for at least one of its state-law Counts.   (Doc. 17, p. 6).   But Plaintiff never argues in its Complaint or its response to the motion to dismiss that Florida law applies to its state-law Counts.   *See* (Docs. 17, 24).

CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, *Federal Practice and Procedure* § 2768 (3d ed. 1998)).   Still, "[f]ederal jurisdiction for this declaratory judgment action is based on diversity jurisdiction, and therefore state law applies to any issue not governed by the Constitution or treaties of the United States or Acts of Congress."   *Feldkamp v. Long Bay Partners, LLC*, No. 2:09-CV-253-FTM29SPC, 2010 WL 3610452, at *4 (M.D. Fla. Sept. 14, 2010) (citing *Mid–Continent Cas. Co. v. American Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir.2010)).

I will now address each of Plaintiff's counts in turn.

### A.  Count I—Breach of Contract

To state a claim for breach of contract under Wisconsin law, a "plaintiff must show a valid contract that the defendant breached and damages flowing from that breach."   *Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008) (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296 (Wis. 1971)).   The only contested element here is whether Plaintiff has sufficiently plead damages.   (Doc. 21, pp. 5–6).

Plaintiff alleges that Defendant's breach—e.g., tardily providing invoices; billing in excess of $133,350 without Plaintiff's approval; and billing for services not requested, services not rendered, and costs not necessary to perform Defendant's contractual duties—has caused Plaintiff to pay Defendant $68,219.60, an amount purportedly greater than the value of the services Defendant performed.   (Doc. 17, ¶¶ 15, 30–31).   In sum, Plaintiff states that it sustained an injury by overpaying for Defendant's services.   *See* (Doc. 17, ¶ 31).

Defendant contends that this claim fails as Plaintiff admits to owing Defendant more than $68,219.60 (Doc. 21, pp. 4–5), and that Plaintiff is not entitled to recoup for services it received. *See, e.g.*, *Pleasure Time, Inc. v. Kuss*, 78 Wis. 2d 373, 385 (1977) (noting that the purpose of

contract damages "is to compensate the injured party for losses necessarily and foreseeably flowing from the breach, but the damaged party is not entitled to be placed in a better position because of a damage award than he or she would have been had the contract been performed"). Plaintiff, however, makes no such admission or plea for free services.   At most, Plaintiff admits that under the Contract it *could* owe Defendant no more than $133,350 (unless Plaintiff consented to additional amounts, which it never did) and that (pre-suit) it was willing to pay Defendant $133,350.   (Doc. 17, ¶¶ 15, 22, 27, 45).   Now, though, Plaintiff challenges the bills it has paid and seeks to recover on that overpayment.   Thus, for purposes of this motion, Plaintiff does not seek to be put in a better position through a damage award; rather, Plaintiff seeks to recover damages for its overpayment for services it didn't request and payments made for excessive hours billed (see Doc. 17, ¶¶ 21, 23–25, 31, 36–37).

Relatedly, Plaintiff contends that it was injured (in the form of overpayment and overbilling) by Defendant's failure to bill bi-weekly.   Indeed, Plaintiff asserts that Defendant's tactic of withholding bills for months on end robbed it of the ability to timely object to fees as they were incurred—i.e., Plaintiff was unable to timely object to the excessive, fraudulent fees and was then confronted with "over-inflated, fraudulent invoices that demanded excessive fees" months after the purported fees had allegedly been incurred, some of which Plaintiff has paid.   (Doc. 17, ¶¶ 21–22).

Thus, given Plaintiff's alleged overpayment and Plaintiff's alleged inability to timely object to the excessive and fraudulent fees, I submit that Plaintiff has sufficiently plead damages in its breach of contract claim and that Defendant's motion to dismiss Count I is due to be denied.

### B.  Count II—Breach of the implied duty of good faith and fair dealing

"It is well-settled that Wisconsin law recognizes the implied contractual duty of good faith and fair dealing in commercial contracts."  *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir. 2000) (citing *Hauer v. Union State Bank of Wautoma*, 192 Wis. 2d 576, 532 (Wis. Ct. App. 1995)).   To state such a claim, "a plaintiff must allege facts 'that can support a conclusion that the party accused of bad faith has actually denied the benefit of the bargain originally intended by the parties.'"  *Tilstra v. Bou-Matic, LLC*, 1 F. Supp. 3d 900, 911 (W.D. Wis. 2014) (quoting *Zenith Insurance Co. v. Employers Insurance*, 141 F.3d 300, 308 (7th Cir.1998)); *N. Crossarm Co. v. Chem. Specialties, Inc.*, 318 F. Supp. 2d 752, 763 (W.D. Wis. 2004).

Breach of this duty includes "'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.'"  *Tilstra*, 1 F. Supp. 3d at 911(quoting *Foseid v. State Bank of Cross Plains,* 197 Wis. 2d 772, 541 (Wis. Ct. App. 1995)); *Springbrook Software, Inc. v. Douglas Cty.*, No. 13-CV-760-SLC, 2015 WL 2248449, at *18 (W.D. Wis. May 13, 2015) ("Wisconsin construes the duty of good faith and fair dealing to cover acts of constructive bad faith, failure to act, carelessness, neglect and other actions that frustrate the purpose of the agreement.").   Finally, under Wisconsin law, "'a party may be liable for breach of the implied covenant of good faith even though all the terms of the written agreement may have been fulfilled.'"  *Zenith Ins. Co.*, 141 F.3d at 308 (quoting *Foseid*, 197 Wis. 2d at 796).

The parties here entered into an agreement in which Defendant would provide consulting services and in which Plaintiff would pay for those services.   As stated *supra*, Plaintiff alleges that Defendant improperly billed Plaintiff and that Plaintiff has, in part, paid these improper bills. (Doc. 17, ¶¶ 36–37).

To support these allegations, Plaintiff contends that Defendant agreed to bill Plaintiff bi-weekly.   Defendant instead withheld its bills for months and then surprised Plaintiff with two large invoices, invoices that included unearned, unreasonable, and baseless fees and costs.   (Doc. 17, ¶¶ 17–22).   These unearned, unreasonable, and baseless fees include charges for work Plaintiff explicitly told Defendant not to do; charges for work unrelated to the Contract and not performed for Plaintiff; and overbilling by almost six-fold on one item.   (Doc. 17, ¶¶ 18, 23–25).[6]

Billing for unearned, unreasonable, and baseless fees and costs (as Plaintiff alleges) deprived Plaintiff of the benefit of the bargain, that bargain being that Plaintiff should receive Defendant's services and that Plaintiff should then pay Defendant for—and only for—the services actually rendered and any associated costs.   Defendant's contention that it didn't engage in any "arbitrary and unreasonable" conduct that frustrated the Contract's goals misses Plaintiff's allegations to the contrary, which the Court must accept as true at this stage.[7]   (Doc. 21, pp. 4, 6–7).   Thus I submit that the motion to dismiss this Count is also due to be denied.

---

[6] Plaintiff concludes that these acts evaded the spirit of the Contract.   *See, e.g.*, *Tilstra*, 1 F. Supp. 3d at 911 (agreeing "with [the plaintiff] that a jury reasonably could conclude that [the defendant] evaded the spirit of the termination clause by eliminating all of [the plaintiff's dealer] territory without first providing [the plaintiff] with its contractual right to a 90–day notice and a showing of good cause").

[7] And Defendant's other arguments are unpersuasive.   First, Plaintiff's allegations are not threadbare; Plaintiff sufficiently states facts showing improper billing.   Second, though Plaintiff does not complain about Defendant's performance of the consulting services, as stated above, an action for breach of the implied duty of good faith and fair dealing may lie under Wisconsin law even if *all* the terms of the agreement have been fulfilled.   *Zenith Ins. Co.*, 141 F.3d at 308.   Third, it could be inferred that Defendant's alleged acts were, at the very minimum, careless and neglectful.   Fourth, as addressed earlier, contrary to Defendant's assertion that Plaintiff admits it has already received the benefit of the bargain (Doc. 21, p. 7), Plaintiff never admits that it owes Defendant $133,350, but instead argues that it has already overpaid Defendant.   Finally, to the extent Defendant seeks to dismiss this Count based on Plaintiff's purported failure to plead damages flowing from Defendant's alleged breach (Doc. 21, p. 6), that request is due to be denied for the reasons stated *supra* in Section III.A.

### C.  Count III—Declaratory Judgment

Under 28 U.S.C. § 2201(a), in a case of actual controversy, the district court "may declare the rights and other legal relations of any interested party seeking such declaration."   Section 2201 claims should "proceed where declaratory relief would (1) 'serve a useful purpose in clarifying and settling the legal relations in issue,' and (2) 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"   *Traturyk v. W.-S. Life Assurance Co.*, No. 615CV1347ORL40TBS, 2016 WL 727546, at \*3 (M.D. Fla. Feb. 24, 2016) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004)).

Such claims are properly plead by alleging facts "from which it appears that there is a substantial likelihood that [the plaintiff] will suffer injury in the future." *Fortran Grp. Int'l Inc. v. Tenet Hosp. Ltd.*, No. 8:10-CV-01602-T, 2010 WL 4366380, at \*2 (M.D. Fla. Oct. 28, 2010) (citing *Malowney v. Fed. Collection Deposit Group.*, 193 F.3d 1342, 1346 (11th Cir.1999)).   That is, "a claim for declaratory judgment must be supported by allegations that create a reasonable inference of a continuing and substantial controversy." *Liotto v. Hartford Ins. Co. of the Midwest*, No. 8:11-CV-02290-EAK, 2012 WL 646257, at \*4 (M.D. Fla. Feb. 28, 2012) (citing *Malowney*, 193 F.3d at 1347).

A dispute over a contract's interpretation may constitute a sufficient controversy. *Maryland Cas. Co. v. Smartcop, Inc.*, No. 4:11-CV-10100-KMM, 2012 WL 2675476, at \*2 (S.D. Fla. July 6, 2012); *Feldkamp*, 2010 WL 3610452 at \*5 (finding that the plaintiff had alleged "sufficient facts to establish that a real and immediate actual, continuing controversy exists" as the parties disagreed over "the appropriate interpretation and application of the contract").   And a specific, concrete threat of litigation may also suffice. *Spectra Chrome, LLC v. Happy Jack's Reflections in Chrome, Inc.*, No. 8:11-CV-23-T-23MAP, 2011 WL 1337508, at \*3 (M.D. Fla. Apr.

7, 2011) (finding that an actual controversy existed "between parties with adverse legal interests" where the "dispute became actual and imminent upon the defendant's threatening to sue the plaintiff").

Plaintiff requests here two declarations: (1) that the Contract is illusory and unenforceable, and (2) that, if the Contract is enforceable, the Contract limits the amount Plaintiff may owe Defendant to $133,350.

1.      Plaintiff notes that the parties dispute whether the Contract is enforceable.   Specifically, it asserts that the Contract is illusory, as it merely required Defendant to bill for "fees" and it did not require Defendant to bill Plaintiff for only earned, reasonable fees.   Indeed, it is clear from the Complaint that this is exactly what Plaintiff insists Defendant did: billed Plaintiff for work it was asked not to perform or arguably didn't perform.   Defendant disagrees, of course, and argues that the Contract clearly requires Defendant to work for its fees (and it did just that).[8]   (Doc. 17, ¶¶ 41–43, 47; 17-1, p. 2; Doc. 21, pp. 4, 8).   Further, as already discussed, contrary to Defendant's argument that Plaintiff has failed to plead any actual injury, Plaintiff alleges that, under the illusory Contract, Plaintiff has already paid nearly $70,000 and that Defendant demands another $170,000 or so.   (Doc. 17, ¶¶ 26–27, 39–41; 21 pp. 4, 8).

While Defendant would have the Court review the merits of Plaintiff's claim—e.g., by examining the Contract itself (Doc. 21, p. 8)—at this stage in the proceeding given the parties' dispute over the Contract's interpretation and its enforceability, along with the amount that Plaintiff has paid under it and Defendant's demand for additional fees,[9] Plaintiff has presented a

---

[8] The parties rely on different parts of the Contract to support their arguments.   *Compare* (Doc. 21, pp. 8–9) (relying on one of the proposals) *with* (Doc. 17, ¶ 43; Doc. 24, p. 9) (relying on the consulting service agreement).

[9] Although the Court offers no opinion on whether the alleged demand letter alone constitutes a specific, concrete threat of litigation, *see Spectra Chrome, LLC*, 2011 WL 1337508 at *3, the Court does

substantial, ongoing controversy and an actual, present need for a declaration of whether the Contract is enforceable. *See, e.g.*, *Nielson Golden Crab Fishery v. Butterworth*, No. 10-61091-CIV, 2011 WL 3293357, at *2 (S.D. Fla. Aug. 1, 2011) (holding that because the defendant does not "specify how [the plaintiff] failed to allege the necessary elements of a declaratory judgment claim" and "[b]ecause [the defendant] prematurely argues the merits of [the plaintiff's] claim for declaratory relief, this Court denies his motion to dismiss").[10]   As such, though Defendant may prevail in the end, a ruling on the merits of Plaintiff's claim is premature and the motion to dismiss is due to be denied.   *See Nielson Golden Crab Fishery*, 2011 WL 3293357 at *2 (denying a motion to dismiss a declaratory judgment claim and noting that "[w]hile [the defendant's] position may ultimately prevail, he is seeking a ruling on the merits of [the plaintiff's] claim, which is premature").

2.      Assuming that the Contract is enforceable, Plaintiff also requests a declaration that it owes Defendant no more than $133,350 under it.   To support this claim, Plaintiff contends that the Contract provides for a fee and cost estimate of no more than $133,350, unless Plaintiff approves of additional fees and costs; that Plaintiff never approved any additional fees or costs; and that—despite this clear contractual fee and cost estimate—Defendant demands an amount that is about $100,000 in excess of the estimate.   (Doc. 17, ¶¶ 44, 45, 46).   Similarly then, given the parties' dispute over the Contract's interpretation and whether the Contract limits the fees and costs, along

---

note that Plaintiff's response clarifies that it filed this lawsuit and this declaratory judgment claim based on Defendant's threat to sue for additional fees (Doc. 24, p. 2).   The Court also notes that Defendant has indeed filed counter-claims requesting additional fees under the Contract.   (Doc. 10, pp. 8–12).

[10]  *See also Maryland Cas. Co.*, 2012 WL 2675476 at *3 (noting that "'a motion to dismiss a complaint for a declaratory judgment is not a motion on the merits' and only determines 'whether the plaintiff is entitled to a declaration of rights, not whether it is entitled to a declaration in its favor'") (quoting *Parr v. Maesburv Homes. Inc.*, No. 09–cv–1268–ORL–19GJK, 2009 WL 5171770, at *3 (M.D. Fla. Dec. 22, 2009)); *Norring v. Private Escapes, LLC*, No. 609-CV-2081ORL-19GJK, 2010 WL 963293, at *7 (M.D. Fla. Mar. 12, 2010).

with Defendant's demand letter for fees and costs over the estimate, I submit that Plaintiff has alleged the existence of a substantial, ongoing controversy and an actual, present, need for a declaration of whether the Contract limits the amount Plaintiff may owe Defendant.

Defendant's arguments to the contrary are unpersuasive.   Defendant asserts that the injury in question has occurred in the past (Doc. 21, p. 9), but as stated *supra* Plaintiff asserts that Defendant is currently demanding about $100,000 in excess of the estimate (Doc. 17, ¶¶ 26–27, 39–41).   Defendant also asserts that this declaratory judgment claim merely restates Plaintiff's breach of contract claim in Count I.   But this is not a reason to dismiss the claim.

Even when a § 2201 claim is redundant of another claim, courts in this district have declined to dismiss the declaratory relief claim on this basis alone.   *Wichael v. Wal-Mart Stores E., LP*, No. 6:14-cv-579-Orl-40DAB, 2014 WL 5502442, at *2 (M.D. Fla. Oct. 30, 2014) ("[M]otions to dismiss made under Rule 12(b)(6) only test the validity of a claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid.").   Indeed, courts in this district regularly allow breach of contract claims to proceed alongside declaratory judgment claims.   *See, e.g.*, *Boumazzoughe v. Roudebush*, No. 615CV798ORL40TBS, 2015 WL 5821519, at *3–5 (M.D. Fla. Oct. 1, 2015).[11]   And "the availability of an adequate legal remedy does not preclude a cause of action for a declaratory judgment." *Feldkamp*, at *5 (citing 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57).

---

[11] *See also Massachusetts Mut. Life Ins. Co. v. Switlyk*, No. 8:13-CV-3243-T-33MAP, 2014 WL 3894342, at *7 (M.D. Fla. Aug. 8, 2014); *Seoul Broad. Sys. Int'l, Inc. v. Ladies Prof'l Golf Ass'n*, No. 6:09-CV-2050ORL19DAB, 2010 WL 2035137, at *4–5 (M.D. Fla. May 21, 2010); *Fernandez v. Scottsdale Ins. Co.*, No. 8:07CV598 T30EAJ, 2007 WL 2209280, at *1 (M.D. Fla. July 30, 2007) (noting that "the fact that [the plaintiff] could have simply brought a breach of contract action does not preclude [the plaintiff from] seeking a declaratory judgment to establish coverage").

## IV.    RECOMMENDATION

Accordingly, upon due consideration and for the reasons stated above, it is respectfully

**RECOMMENDED** that the motion to dismiss (Doc. 21) be **DENIED.**

**RECOMMENDED** in Ocala, Florida on September 28, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties